# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

KIMBERLY TANNER,

                             Plaintiff,

       v.                                    5:15-CV-577
                                                  (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.

---

MARK M. MCDONALD, ESQ., for Plaintiff
DAVID L. BROWN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") Benefits on December 11, 2012, alleging disability beginning December 3, 2012. (Administrative Transcript ("T") at 11, 157-72). The applications were denied initially on February 4, 2013. (T. 47-64). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 18, 2014. (T. 29-46). On October 14, 2014, ALJ Barry E. Ryan found plaintiff was not disabled. (T. 8-28). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 24,

2015. (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering

2

vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the administrative hearing on August 15, 2013, plaintiff was 40 years old. (T. 33). She resided with her boyfriend and her seventeen year old daughter. (*Id*.). Plaintiff had obtained a general equivalency diploma, and subsequently completed a year of college credits. (T. 33, 44). Plaintiff's previous employment included work as a toll collector, farm laborer, and cashier. (T. 196). Most recently, plaintiff was employed as an asset protection/security associate at a large retail store. (T. 34, 196). She testified that she left that position in December 2012 due to her vertigo, migraines, and other headaches. (T. 35).

Plaintiff testified that she had suffered from migraines on a weekly basis since childhood. (T. 38). According to her testimony, the dizziness and nausea from her

migraines became more severe in late 2012, and she required several days to recover after a migraine attack. (*Id*.). When she had a migraine, plaintiff became sensitive to light, sound, and odors, and had to lie down in a dark room. (*Id*.). Plaintiff reported that her migraines lasted anywhere from one hour to twenty-four hours. (*Id*.). She also testified that she began experiencing "cluster headaches" in late 2012 that occurred on a daily basis for months at a time.[1] (T. 37). She reported that she could function with a headache, but that it was difficult because she became tired, lightheaded, and nauseated. (T. 333). Since her symptoms had become more severe, plaintiff's treating sources had recommended a variety of pain medication, including Nortriptyline, Meclizine, Topiramate, Imitirex, Celexa, Relpax, Fioricet, Tramodol, Aleve, and Ibuprofen, along with botox injections, ice packs, and specialist treatment by neurologists and chiropractors. (T. 17, 338, 369-70).

The ALJ's decision and the parties' briefs provide a detailed statement of the medical and other evidence of record. Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  THE ALJ'S DECISION

The ALJ determined that plaintiff met her insured status through December 31, 2016, and that plaintiff had not engaged in substantial gainful activity since her alleged

---

[1] The term "cluster headache" refers to a recurring headache that develops in cyclical patterns lasting from weeks to months, usually followed by remission periods when the headache attacks stop completely. http://www.mayoclinic.org/diseases-conditions/cluster-headache/basics/definition/con-20031706. The treatment record shows that plaintiff's treating providers disagreed about whether she had cluster headaches. (T. 357, 365).

onset date of December 3, 2012. (T. 13-14). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: headaches and vertigo. (T. 13-14). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 15).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform the full range of light work because plaintiff was able to lift and/or carry twenty pounds occasionally and ten pounds frequently; could stand and/or walk for six hours in an eight-hour workday; and could sit for six hours in an eight-hour workday. (T. 15-19). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 15). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 16-17). The ALJ next determined that plaintiff was able to perform her past relevant work as a toll collector. (T. 19). The ALJ also concluded, in the alternative, that there were other jobs that existed in

6

significant numbers in the national economy that plaintiff could also perform, in light of plaintiff's age, education, work experience, and RFC. (T. 20). Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date, December 3, 2012, through the date of the decision. (*Id*.).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ failed to assess all severe physical impairments. (Pl.'s Br. at 15-16) (Dkt. No. 15).

2.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 16-23).

3.    The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 25-28).

4.    The Commissioner erred by failing to consider and discuss the additional medical evidence submitted to the Appeals Council after the ALJ rendered his decision, particularly Dr. Rashid's medical source statement. (Pl.'s Brief at 23-25).

Defendant argues that the Commissioner's determination is supported by substantial evidence and should be affirmed. (Def.'s Br. at 5-14) (Dkt. No. 23). This court concludes, for the reasons set forth below, that the ALJ did not properly consider the cumulative impact of all of plaintiff's impairments, particularly the impact of her migraines and vertigo on her ability to function during an eight-hour workday. The ALJ did not appropriately document the reasons for his RFC assessment with respect to these severe impairments, or for his finding that plaintiff could perform her past work. Therefore, this court cannot determine whether the ALJ's findings are supported by

substantial evidence. In addition, the Appeals Council erred by refusing to consider the opinion of Dr. Rashid, a treating neurologist who evaluated the impact of plaintiff's migraines and vertigo on her ability to function. Accordingly, it is recommended that the case be remanded so that the ALJ may properly evaluate the totality of the medical and opinion evidence, including the opinion of Dr. Rashid, reconsider plaintiff's credibility, and re-assess plaintiff's RFC.

## DISCUSSION

## VI. SEVERE IMPAIRMENT

### A. Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep't.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step Two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the

remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## B. Application

Plaintiff argues that the ALJ erred in his step two determination by failing to identify plaintiff's diagnosed migraines as a severe impairment. (Pl.'s Br. at 15). While the ALJ found that plaintiff's headaches and vertigo were severe impairments, plaintiff contends that her diagnosis of migraines, a condition that often involves associated symptoms of nausea, vomiting, photophobia, sonophobia, and osmophobia, was "not simply a headache," and should be considered a separate severe impairment. (Pl.'s Br. at 15). Plaintiff further argues that this error was not harmless, because it influenced the ALJ's RFC determination and his assessment of plaintiff's credibility. (Pl.'s Br. at 15-16).

Plaintiff's argument ignores the numerous instances in the record where plaintiff's treating sources used the terms "headaches, " "cluster headaches" and

"migraines" interchangeably when describing her symptoms. (T. 401, 403, 422, 457). It also ignores the ALJ's numerous references in his decision to plaintiff's migraine diagnosis, and the related description of plaintiff's reported symptoms including nausea, dizziness, and sensitivity to odors, lights, and sound when she had a headache. (T. 15-16). Reading the ALJ's determination as a whole, it is evident that the ALJ considered his description of plaintiff's impairments as "headaches" to encompass both her diagnosed migraines and her reported cluster headaches. Moreover, even if the ALJ erred in failing to use the term "migraine" in his severity determination at step two, any error was harmless because the ALJ considered plaintiff's migraines and the associated symptoms as part of his RFC determination.

## VII. RFC EVALUATION/CREDIBILITY

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

11

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

## 2. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

## B. Application

### 1. RFC

Plaintiff argues that, in evaluating the medical evidence and determining the RFC, the ALJ gave undue weight to the opinion of non-examining neurologist Dr. Woodrow W. Janese, who reviewed plaintiff's medical records and provided written responses to the ALJ's interrogatories. (Pl.'s Br. at 18). Plaintiff also contends that the

ALJ failed to provide substantial evidence to support the "reduced weight" that he assigned to the opinion of consultative examiner Dr. Myra Shayevitz and the "minimal weight" that he assigned to the opinions of treating nurse practitioner ("NP") Jenny Ross and treating chiropractor Barry Leader. (Pl.'s Br. at 23). This court agrees with plaintiff's arguments and concludes that, as documented in his decision, the ALJ's RFC determination was not supported by substantial evidence.

In an effort to more fully develop the medical record, the ALJ provided plaintiff's medical records to an outside expert, Dr. Janese, along with an interrogatory regarding plaintiff's functional limitations. (T.431-51, 475-95, 509-18). Dr. Janese completed his first interrogatory on May 24, 2014, and provided updates as requested by the ALJ to reflect additional medical records on August 11, 2014, and August 23, 2014. (*Id*.). The interrogatory questions were identical each time, and Dr. Janese's conclusions were unchanged with each update.

Dr. Janese found that plaintiff's impairments, which he described as headaches, did not meet or equal any Listing. (T. 450, 494, 517). He opined that plaintiff could lift and carry up to fifty pounds occasionally and up to twenty pounds frequently; could stand, walk or sit for up to four hours at one time without interruption, for a total of up to six hours in an eight hour workday for each activity; and had no limitations with regard to reaching, handling, fingering, feeling, pushing, pulling, or operating foot controls. (T. 443-45, 487-89, 510-12). Plaintiff also had no restrictions on climbing, balancing, stooping, kneeling, crouching, and crawling. (T. 446, 490, 513). Plaintiff could also tolerate continuous exposure to unprotected heights, moving mechanical

parts, vibrations, and environmental irritants such as humidity, wetness, dust, odors, fumes, extreme cold and extreme heat. (T. 447, 491, 514). Dr. Janese opined that plaintiff could "frequently" tolerate loud noise, such as heavy traffic, and was capable of operating a motor vehicle. (*Id*.).

Dr. Janese included a limited narrative response with his findings, but noted that EEG and MRI results of plaintiff's brain were negative, with the exception of some positive findings indicating sinusitis at the ethmoid and frontal sinuses. (T. 351, 449, 493, 516). Dr. Janese's response noted that plaintiff had multiple neurological examinations, had been prescribed opioid medication, and had undergone botox injections without relief. (T. 493). He recommended that plaintiff quit smoking and be treated with sinus medication. (T. 450, 494, 517).

The ALJ assigned Dr. Janese's opinion great weight, citing the neurologist's expertise as well the opinion's overall consistency with plaintiff's treatment history and diagnostic test results. (T. 18). However, while Dr. Janese's response demonstrated that he had reviewed plaintiff's medical records, the neurologist made no findings regarding the frequency or intensity of plaintiff's headaches or migraines. While Dr. Janese did not challenge the diagnosis of intense headaches and migraines, he apparently concluded that plaintiff's headaches had no significant impact on plaintiff's ability to function in the workplace, without explaining the basis for this conclusion. In addition, Dr. Janese did not offer any explanation for his conclusion that plaintiff, who had been diagnosed with vertigo, was able to climb ladders and scaffolds and work at unprotected heights without any restriction. (T. 490-91). This court notes that, despite

the ALJ's determination that plaintiff's vertigo and headaches were severe impairments, the ALJ never asked Dr. Janese for his opinion with regard to any potential functional limitations that resulted from plaintiff's reported symptoms of light sensitivity, dizziness, or nausea, or from plaintiff's reported need to lie down in a dark room when her headaches occurred. While the interrogatory form did provide space for a general explanation of the evidence supporting his findings, Dr. Janese left these sections blank on each of the three interrogatories. (T. 457, 495, 518).

Like Dr. Janese's opinion, the ALJ's RFC determination fails to evaluate the extent that plaintiff's severe impairments of headaches and vertigo would impose functional limitations on her ability to work. *See Irizarry v. Astrue*, No. 10-cv-606, 2013 WL 4197096, at *10 (W.D. Wisc. Aug. 15, 2013) (remanding where, after ALJ determined that plaintiff's migraines were a severe impairment, the ALJ's determination did not include any finding about how much the plaintiff's migraines affected her ability to work). The ALJ instead made the summary conclusion that plaintiff's "headaches and vertigo have been accounted for [in the RFC] because the [plaintiff's] physical exertional abilities have been reduced, including the ability to lift, carry, stand, walk, and sit. (T. 18). The ALJ only cited Dr. Janese's inconclusive medical opinion, and plaintiff's conservative medical treatment history and "unremarkable MRIs and EEGs," as support for this conclusion. (*Id*.) The ALJ's reliance on diagnostic imaging results fails to recognize that migraine headaches do not stem from a physical or chemical abnormality which can be detected by imaging techniques or laboratory tests. *Sech v. Comm. of Soc. Sec.*, No. 7:13-CV-1356 (GLS),

2015 WL 1447125, *3 (N.D.N.Y. Mar. 30, 2015); *Groff v. Comm'r of Soc. Sec.,* No. 7:05–CV–54, 2008 WL 4104689, at *6–8 (N.D.N.Y. Sept. 3, 2008) ("[T]o place such emphasis on the absence of 'any specific evaluation or treatment' is . . . a misreckoning of the elusive task a doctor faces in diagnosing this impairment as there exists no objective clinical test which can corroborate the existence of migraines.").

Likewise, the ALJ's characterization of plaintiff's course of treatment as "conservative" does not account for the record evidence that plaintiff's physicians had pursued all potential treatment options. The record shows that plaintiff had been prescribed narcotic pain medication, after over the counter and prescription pain relievers, chiropractic treatment and botox injections were unsuccessful. (T. 401, 453, 455). The Merck Manual[2], a medical reference excerpted in plaintiff's filing to the Appeals Council, describes the use of opioids as "a last resort (rescue drug) for severe headache when other measures are ineffective." (T. 532). The ALJ does not identify any more aggressive treatment measures available to plaintiff's physicians.

While the ALJ placed disproportionate significance on diagnostic tests and treatment methodologies, he assigned "reduced weight" to the observations of consultative examiner Dr. Shayevitz, who opined that plaintiff would "have difficulty with any prolonged activity on a daily basis when a headache is occurring." (T. 18, 336). At the time of the hearing, Dr. Shayevitz was the only acceptable medical source in the record who offered an opinion regarding the functional limitations imposed by

_____

[2] The referenced section of the Merck Manual Professional Version is available online at http://www.merckmanuals.com/professional/neurologic-disorders/headache/migraine.

plaintiff's headaches. The ALJ concluded that Dr. Shayevitz's opinion was based upon plaintiff's reported symptoms during a single physical examination, was inconsistent with the generally normal clinical findings during the consultative exam, and was inconsistent with Dr. Janese's opinion. (T. 18). In reaching this conclusion, the ALJ did not address the numerous contemporary medical records by treating physicians that supported Dr. Shayevitz's opinion that plaintiff suffered from debilitating migraines and other headaches. (T. 338-339, 356-58, 381, 384, 361-62). This conclusion also failed to recognize the previously described gaps in Dr. Janese's opinion.

Dr. Shayevitz's opinion was further supported by the documented observations of NP Ross and chiropractor Leader, who reported frequent debilitating headaches that, in their opinion, incapacitated plaintiff and impeded her ability to work. (T. 365-67, 419-21). The ALJ assigned the opinions of Ross and Leader "minimal weight," because they were not from an acceptable medical sources, neither source provided an adequate explanation of their findings, and their conclusions were inconsistent with other evidence, including the opinion of Dr. Janese. (T. 19). While neither is an acceptable medical source under the regulations, nurse practitioners and chiropractors are "other sources" whose opinions can help show the severity of an established impairment and how it affects one's ability to work. 20 C.F.R. §§ 404.1513(a), (d); 416.913(a), (d). Their opinions may be entitled to significant weight, to the extent that they are consistent with substantial evidence from acceptable medical sources. *See* Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *5-6 (opinions from "non-medical sources" who have seen the individual in their professional capacity should be

evaluated using the applicable factors, including how consistent the opinion is with other evidence and the degree to which the source presents relevant evidence to support an opinion). Given that the weight assigned by the ALJ was based upon his erroneous consideration of the overall medical evidence and Dr. Janese's opinion, it is appropriate that, on remand, the ALJ be directed to reconsider the Shayevitz, Ross, and Leader opinions.

## 2.    Credibility

The ALJ discounted plaintiff's testimony regarding the severity of her symptoms from headaches and vertigo, and the resulting limitations on her ability to function. (T. 17-18). Plaintiff testified that she had migraines once or twice a week that caused nausea and dizziness, and that treatment had limited success in reducing her symptoms. (T. 37). Plaintiff testified that she was unable to leave her bed due to the pain when she had a migraine attack, and that she tried to isolate herself from noise and lights when they occurred. (T.37, 39). Plaintiff also testified that she began having cluster headaches in late 2012 that occurred on a daily basis for months at a time. (T. 37). She also testified that her vertigo caused her to vomit or have "dry heaves," and to see white "worms" or squiggly lines in her right eye. (T. 39, 367). Plaintiff testified that she was able do household chores such as laundry, washing dishes, and sweeping the floor when she did not have a migraine or severe headache, but would often have to sit down after about an hour due to dizziness. (T. 44).

In assessing the credibility of plaintiff's statements regarding her symptoms and limitations, the ALJ noted that plaintiff had a good work history up to her alleged onset

date, and that her testimony was consistent with the description of her symptoms in the supporting affidavits offered by her aunt and her boyfriend. (T. 17). The ALJ noted that plaintiff reported a lifetime history of headaches, but found that there was minimal documentation of any symptoms prior to the alleged onset date, and that plaintiff worked at substantial gainful activity levels up to that date. (T. 17). This finding appears consistent with plaintiff's testimony that her symptoms had been manageable until late 2012, and that "she was able to hide most of it for a while" so that she could continue working. (T. 35). It also appears consistent with plaintiff's treatment records, which show an increase in doctor visits and corresponding treatment after December 2012. (T. 338). The ALJ failed to explain his reasoning that plaintiff's ability to work prior to the alleged onset date negatively impacted plaintiff's credibility. (T. 17). The remainder of the ALJ's credibility assessment is based upon perceived inconsistencies with the medical evidence and with Dr. Janese's opinion. (*Id*.). Given the errors in the ALJ's review of the objective medical record and the opinion evidence (discussed above), that aspect of the credibility analysis is also flawed and should be reassessed on remand.

In summary, this court cannot conclude that the ALJ's RFC finding, including the credibility assessment, was supported by substantial evidence, and recommends that the case be remanded for additional administrative proceedings. *See, e.g.*, *Ebert v. Astrue*, No. 1:07-CV-1166 (LEK/DEP), 2009 WL 3764219, at *8-9 (N.D.N.Y. Nov. 10, 2009) (by ignoring contrary medical evidence in the record and discounting plaintiff's testimony regarding the severity of her symptoms, the ALJ "plainly failed to consider

the cumulative impact of all of plaintiff's impairments, most notably the contributing affects of her headaches" in assessing her RFC); *Groff,* 2008 WL 4104689, at *6-8, 11-12 (N.D.N.Y. Sept. 3, 2008) (where the ALJ incorrectly recited the medical record regarding plaintiff's migraine headaches, the case must be remanded for proper development of the record and reassessment of plaintiff's RFC).

## VIII. NEW EVIDENCE FIRST SUBMITTED TO APPEALS COUNCIL

### A. Legal Standards

"While evidence submitted to the Appeals Council becomes part of the administrative record, *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.1996), the Appeals Council . . . will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to the weight of the evidence, including the new evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); 20 C.F.R. §§ 404.970(b), 404.976(b), 416.1470(b), 416.1476(b); *see also Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (new evidence forms part of the administrative record under review "only to the extent that it relates to the time frame encompassed in the ALJ's decision"). "Materiality requires that the new evidence not concern 'a later-acquired disability or the subsequent deterioration of the previous non-disabling condition.'" *Pearson v. Astrue*, 1:10-CV-521 (MAD), 2012 WL 527675, at *11 (N.D.N.Y. Feb. 17, 2012) (*citing Estevez v. Apfel*, 97 Civ. 4034, 1998 WL 872410, at *7 (S.D.N.Y. Dec. 14, 1998)). Where, as here, the Appeals Council determined that the new evidence submitted did not relate to the period on or before the

ALJ's decision, "[t]he role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision." *Pearson v. Astrue*, 2012 WL 527675, at *11 (*citing Edwards v. Astrue*, 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *7, n. 12 (N.D.N.Y. Sept. 16, 2010)).

## B.    Application

Plaintiff's counsel submitted updated medical evidence, including a Migraine Headache Questionnaire prepared by plaintiff's treating neurologist, Dr. Ijaz Rashid on October 27, 2014[3], and his contemporaneous treatment notes.  (T. 296, 519-24).  As noted above, the Appeals Council made the updated medical evidence part of the record, but found no reason for changing the ALJ's decision.  (T. 1-6).  The Appeals Council did not explain why the additional evidence was not material.

An ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).  The Appeals Council is bound by the same rule. *Beck v. Colvin*, 2013 WL 5533571, at *8 (W.D.N.Y. 2013) (citing 20 C.F.R. § 416.927 (e)(3)).  Here, there is no dispute that Dr. Rashid, whose earlier treatment notes were part of the record before the ALJ, qualified as plaintiff's treating physician.[4]  (T. 468-74).  It is also clear that Dr. Rashid's opinion that plaintiff's migraines interfered with the attention and concentration needed to

---

[3] Dr. Rashid opined that plaintiff's limitations dated back to at least June 17, 2014, the date of his first appointment with the plaintiff. (T. 524).

[4] Defendant's brief describes Dr. Rashid as a "treating physician."  (Def. Br. at 10).

22

perform even simple work tasks was inconsistent with the ALJ's determination that plaintiff could perform the full range of light work. (T. 523). *Morse v. Astrue*, No. 7:06-CV-1417 (LEK/VEB), 2009 WL 1322301, at *5 (N.D.N.Y. 2009) (remanding where newly submitted treating physician opinion refuted the ALJ's conclusion that plaintiff was capable of performing light work). Dr. Rashid's opinion was also not cumulative of other evidence, because the record before the ALJ did not include an opinion from a treating physician. In addition, the ALJ had discounted the opinions of Dr. Shayevitz due to the lack of a treating relationship with the plaintiff, and the opinions of NP Ross and chiropractor Leader because they were not acceptable medical sources. (T. 18-19). He had also cited Dr. Janese's expertise as a neurologist as a factor in assigning his opinion great weight. Therefore, there is a reasonable possibility that the ALJ would have reached a different result if the original administrative record had included the opinion of plaintiff's treating neurologist. *Davidson v. Colvin*, No. 1:12-CV-316 (MAD/VEB), 2013 WL 5278670 at *5, *9 (N.D.N.Y. Sept. 18, 2013) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d. Cir. 1991)).

In summary, the record does not demonstrate that the Appeals Council properly evaluated Dr. Rashid's opinion and provided an explanation for rejecting or discounting material aspects of it. Remand for further administrative hearings to consider Dr. Rashid's opinion is therefore appropriate. *Davidson*, 2013 WL 5278670 at *9 (remand warranted where "the Appeals Council not only failed to provide 'good reasons' for disregarding the treating physician's opinion, it did not provide any reasons at all . . ."); *see also Rosas Nazario v. Colvin*, No. 14-CV-6085P, 2015 WL

5104548, at *3-4 (W.D.N.Y. Aug. 27, 2015) (collecting cases).  In finding that the Appeals Council erred in failing to consider Dr. Rashid's opinion, this court reaches no conclusion whether, on remand, Dr. Rashid's opinion must be given controlling weight.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **REVERSED**, and that this case be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper determination of plaintiff's residual functional capacity to perform past work and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:      May 11, 2016

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**